## FORSYTH *v.* MARTIN et al.

The drawee, with whom a bill has been left for acceptance, holds it as a deposit; and the retaining of the bill in violation of the deposit is a species of theft. The fact that the owners of the bill were indebted to the drawee for more than its amount, gives the latter no semblance of a right to retain it. No compensation takes place under such circumstances. C. C. 2207.

A party will never be permitted to take advantage of his own wrong, nor to put his adversary in a worse position by a gross dereliction of duty on his part.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge, J.* The facts of this case are stated in the opinion *infrâ.*

*Mott*, for the plaintiff.

*Micou*, for the appellants. It has been contended that, compensation would not operate, because the bills were held by the defendants as a deposit, and that it came within one of the exceptions created by article 2207. A deposit is defined by the Code to be, an act by which a person receives the property of another, binding himself to preserve it and return it in kind. Art. 2897. There are certain facts or circumstances, which are indispensably necessary to constitute this particular contract; as that the thing be delivered, that the contract be gratuitous, &c. These elements and others, enter into the essence of the contract. The principal end of the delivery must be, merely to keep the thing for the owner: "If it be not, then it becomes a different species of contract. Thus, if the delivery is made, in order to transfer the property in the thing to the party, as for example, if the delivery is upon a donation, or a sale, or an exchange, or any other like valuable contract, it cannot technically be called a deposit. Another example put is, where title deeds are delivered to an attorney or solicitor, to enable him to defend any cause; there it is said not to be a case of deposit, but of mandate." Story on *Bailments*, sec. 56. "Dans tous les cas, elle n'assure au contrat le caractère de dépôt que lorsqu'elle a pour fin principale, la garde de la chose. La tradition est-elle faite dans un utre but, c'est un autre contrat. Mais ce n'est pas un dépôt. Uniuscujusque contractûs, initium spectandum et causa." Troplong, *Dépôt* § 23. Pothier thust states what is necessary to constitute the contract of deposit. "Il faut, 1o, qu'il soit fait au dépositaire une tradition de la chose déposée, si elle n'est déjà par devers lui: 2o, que la fin principale de le tradition soit la garde de cette chose; 3o, que le dépositaire se charge gratuitement de cette garde; 4o,

FORSYTH
v.
MARTIN.

il faut, comme dans tous les contrats, que le consentement des parties intervienne." Poth. Dep. n. 6, art. 2. n. 10. 1 Domat, Liv. 1, tit. 7, sec. 3. Pothier, Pand. Dig. lib. 16, tit. 3, § 2. " Et par-là se résout facilement la question de savoir si celui qui a reçu des lettres de change pour en faire le recouvrement pour compte, est un depositaire ou un mandataire. Il est clair (ainsi que la Cour de Cassation l'a décidé le 20 Mai, 1814,) qu'il n'a été revêtu que d'un mandat. Troplong, Dépôt, n. 31.

The Code preserves all these characteristics, in the definition and description of a deposit. Its object is a charge gratuitously assumed, to keep, and preserve and return, moveable property. If any other duty or act be stipulated, then the enquiry is, whether the mere keeping and preservation of the thing, be the main object or the incident. If it be the principal object, it is a deposit. It is a trust reposed in the honesty of the receiver; but if the keeping be the incident, and not the main object, there is no deposit, and the contract is classed and treated under such other rank as may best accord with the intention of the parties. A bill of exchange is presented for acceptance. It may be accepted immediately, or it may be left an hour or a day for an answer. Is it possible to contend, that its delivery is a deposit; that the main object of its being left, is to keep it safely; that the drawee has gratuitously assumed the charge of preserving the thing for the owner, and has submitted himself to the rules governing a technical deposit? These questions can only be answered in the negative. The exception to the law of compensation, established by the Code, is applicable only to that technical class of deposits, thus accurately defined by the Codes, and writers on the civil law. The leaving a bill for acceptance is not a deposit, and does not fall within the exception. In conformity with this view of the subject, are all the decisions upon the right of compensation, by banks and bankers, against their customers. The moneys left with banks, are known in common parlance, by no other name than deposits. They are so referred to constantly in laws, bank statements, and books and treatises on banking. Yet the debts due to banks by its customers, are compensated and extinguished by their deposit account. *Rogerson* v. *Ladbrooke*, 1 Bing. 93. 2 Chitty's Cases, 1158. *Bank of Louisiana* v. *Fowler*, 10 La. 197.

The delivery of a bill for acceptance or payment, is merely a written request to accept or pay. Whether the answer be given immediately, or whether the drawee take a reasonable time to deliberate, is at the option of the latter. The law merchant permits the drawee to retain the bill for a day. His exercise of this right, is not with the intention, nor for the purpose of the safe keeping of the bill. The custody of the drawee, is not the main object, but merely an incident; in fact whether he retain it only so long as to write his name, or for an hour or a day, is an accident, depending on his own will, and not that of the holder. A bill being thus presented and accepted, the acceptor becomes the debtor of the holder, to the amount of the bill. The object of the presentment is accomplished; and the bill becomes the evidence of a debt between the parties.

If such a bill, drawn at sight, be accepted, the debt is immediately due. But suppose the acceptor has notes or bills of the holder, due and unpaid, may he not offer them in compensation against his acceptance? Take, for instance, a bill at sight presented by a bank as holder, and the offer of the notes of the bank in payment. It is impossible to doubt that compensation would operate, and that the two debts, simultaneously existing, would extinguish each other. C. C. 2204. *Burroughs* v. *Nettles*, 7 La. 119. , Chitty on Bills, p. 390, ed. 1842. If such a bill could be met and extinguished by compensation, what obstacle prevents the same defense being opposed to a bill on time? The acceptor could pay it at once. The term is granted for his benefit, and not for the benefit of the creditor, (C. C. 2048—Pothier on Obl., n. 233,) unless there be a stipulation to the contrary. If, then, the acceptor could instantly pay a bill on time to the holder, he can instantly extinguish it by compensation.

By an article of the Code de Commerce, the law in France is made otherwise. Art. 146. 6 Toullier, n. 679. A bill payable on time, cannot be paid before maturity, without the consent of the holder. But this is not the law of Louisiana, nor the commercial law of the United States. It is held, by the law merchant, that if the acceptor pay before maturity, but do not take up the bill, or otherwise, by carelessness, permit it to be issued again, he will be compelled to pay again, to an innocent holder. Chitty on Bills, p. 100, a. eng. ed.

FORSYTH
v.
MARTIN.

1834. Story on Bills, sec. 417. But I have found no case decided in England or the United States, to the point, that an acceptor could not make a valid tender of the amount of the bill, before its maturity, to the holder.

There is another answer to the argument from the law of deposit. This suit was instituted at first, for the recovery of the bills specifically; no relief was demanded, except a decree of restitution, and damages for detention: and this is the only appropriate relief in a suit for a deposit. But the bills having fallen due, the nature of the suit was changed, from a suit for the bills, to a suit on the bills. The supplemental petition demands a money judgment for their amount. The suit must, therefore, be decided as if the bills had been accepted, returned, and sued on by the holder. The possession of the bills does not alter the nature or existence of the debt. Whether produced in court by plaintiff or defendant, they bear witness to a debt by the acceptor to the endorsee. It is, therefore, contended, that by voluntarily changing the prayer for relief, the right to claim the restoration of the bills is waived, and the right of compensation must be tested by the rules applicable to ordinary actions on bills of exchange.

The judgment of the court was pronounced by

EUSTIS, C. J, The plaintiff, who resides in Kentucky, alleges that he forwarded for collection to *Lonsdale & Co.* of New Orleans, two certain drafts, for $1,000 each, drawn at Louisville, on *Martin & Co.*, a commercial firm of New Orleans, payable ten days after sight; that the drafts were left at the counting-house of the said *Martin & Co.* for their acceptance, and that they fraudulently and illegally retained the same and refused to give them up. He prays for a writ of sequestration, and that they have judgment for the drafts, and for general relief.

The defense is, that *Lonsdale & Co.*, who were the debtors of the defendants, were the owners of the drafts sued for; that they were specially endorsed to their order by said plaintiff; that said *Lonsdale & Co.* presented said drafts for acceptance, whereupon, the defendants, the drawees, being willing to accept and pay the same, did immediately accept the same, and, waiving the delay or time, gave to said *Lonsdale & Co.* credit upon the said demands due by them as aforesaid; by means whereof said bills were extinguished by compensation. A supplemental petition was afterwards filed, by which judgment was asked against the defendants for the amount of the drafts, interest and costs. There was judgment for the plaintiff, and the defendants have appealed.

It appears that these drafts were left for acceptance at *Martin & Co's* counting house, and their retention of the drafts to meet the debt due by *Lonsdale & Co.* is attempted to be justified. The law on this subject is stated to be, in works of authority, that, in every case of a presentment for acceptance, the drawee is entitled, if he require it, to have twenty-four hours to consider whether he will accept the bill or not; and it is usual, in such cases, for the holder to leave the bill with him during that period. If there is any trust which above all others ought to be held sacred by men of business, it is this. The drawee retaining the bill, for the purpose of determining on its acceptance, holds it on deposit, the violation of which the law considers as a species of theft. Our insolvent laws deprive the debtor in actual custody of their relief, who shall have disposed of funds entrusted to him under the title of deposit. 1 Moreau's Dig. p. 547. Pothier, Traité de Dépôt, § 43. The Code, art. 2207, which allows compensation, whatever may be the causes of the debts, expressly excludes its operation on a demand of restitution of a deposit. It is clear, then, that if the bills did belong to *Lonsdale & Co.*, *Martin & Co.* had not the semblance of right to retain them.

But, it is said that the plaintiff cannot recover, because he is not the owner of the drafts.

On the attempt of *Martin & Co.* to retain the drafts, *Lonsdale & Co.* refused to hold the drafts on their own account, and, as the agents of the plaintiff, brought the present action, which we think they had a clear right to do, under the circumstances. The prosecution of this suit on the part of the plaintiff is a ratification of this act, the authority of the attorney on record not having been drawn in question.

True it is that the drafts are endorsed to the order of *Lonsdale & Co.* by the plaintiff, and have not been re-endorsed to him by *Lonsdale & Co.*, and for a very excellent reason, that the defendants kept the drafts themselves, and prevented the parties from putting the instruments in proper legal form for the recovery of the debt by the plaintiff. We can never permit a party to take advantage of his own wrong, nor put his adversary in a worse position by a gross dereliction of duty. Nemo ex suo delicto meliorem suam conditionem facere potest. ff. 50, 17, 134, 1.

The payment to the plaintiff of the amount of these drafts, will be a good and valid discharge to the defendants; which is all they can require in this case,

*Judgment affirmed.*