WILLIAMS *et al. v.* LEE *et al.*

[94 South. 454.  No. 22915.]

1. CONSTITUTIONAL LAW. *Courts cannot ingraft exceptions on statute.*
   The courts have no authority to ingraft exceptions on the rules for the descent and distribution of property contained in Code 1906, sections 1648-1660 (Hemingway's Code, sections 1380-1392).

2. DESCENT AND DISTRIBUTION. *Wife not estopped by silence with knowledge of pretended second marriage to assert right of inheritance.*

Mere silence on the part of a man's legal wife with knowledge of his pretended second marriage did not estop her from asserting her right to inherit from him under Code 1906, sections 1648-1660 (Hemingway's Code, sections 1380-1392), where she neither encouraged nor assented to the illegitimate marriage.

APPEAL from chancery court of Bolivar county.

HON. G. E. WILLIAMS, Chancellor.

Action between Louella Williams and others and C. S. Lee and others. Judgment for the latter, and the former appeal. Affirmed.

*Thomas L. Jordan,* for appellant.

Louisa Williams is estopped to claim as an heir. *Woodson* v. *Colored Grand Lodge, K. of H.,* 97 Miss. 210, 52 So. 457; *Schrader* v. *Schrader,* 119 Miss. 526, 81 So. 227. There is but one question for the court to determine in this case, and that is one of law, viz., that of estoppel. The facts, as stated above, are hardly disputed. The question is the same as asked by the court in the case of *Woodson* v. *Grand Lodge, K. of H.*: "Will Louisa Williams now be permitted to assert that which is at variance with the condition she has accepted, and in accordance with which she has lived, in order to make of herself an heir of Jonas S. Williams?" For over seven years, Louisa Williams, threw off the yoke of a pretended marriage to appellant, which she had permitted him to contract. If he had not done so voluntarily, she could have forced him to by resort to a legal proceeding. Common justice and every rule of law and equity demanded that she protest against the relations which she had suffered her husband and Louella Williams to assume. And since she did not protest, did not speak out, can she now be heard to set up a claim to her deceased husband's property as one of his heirs?

It may be argued that there was no question of heirship involved in either the Woodson or the Shrader case.

in the sense that there was a contest between innocent heirs, for the purpose of determining which set are legitimate heirs. But there is in the case now before the court no contest between innocent heirs, or if Louisa Williams is estopped to say that she is the widow of Jonas S. Williams, and therefore one of his heirs, then the court has only to determine whether or not Louella Williams, the de facto wife is to share in said property as one of the heirs along with the daughter, Victoria Williams Sims. Neither is there now involved the question in this case of a resulting trust, since by decree of the lower court, the matter is to be later determined, in the event of an adverse decision here to the appellee.

We respectfully submit that the decree of the chancellor should be reversed and a final decree rendered in the supreme court holding that appellant is one of the heirs at law of said Jonas S. Williams, and that Louella Williams is estopped to set up a claim as an heir.

*J. W. Dulaney,* for appellee.

The single contention made by counsel for appellant is that Louella Williams is estopped to claim as an heir of her husband, Jonas Williams. As stated in the brief for appellant, no question of a resulting trust is involved; and this amounts to saying that the decision in *Shrader* v. *Shrader,* 119 Miss. 526, 81 So. 237, cited by counsel for appellant is not applicable. Neither is there any question involved as to the identity of a person named in a contract, and therefore the decision in *Woodson* v. *Colored Grand Lodge, etc.,* 97 Miss. 210, 52 So. 457, the other case relied upon by counsel for appellant is not applicable.

For appellee, Louisa Williams, we contend: First, that appellant cannot complain of the decree, because appellant cannot take by descent under a void marriage; second, that Louisa Williams is not estopped to claim as an heir of her deceased husband. The chancellor found, the record shows, and we understand it to be admitted by coun-

sel for appellant, that at the time of the death of Jonas Williams: 1. Louisa was his wife under a valid marriage which had never been dissolved. 2. Louella was not his wife, but was living with him in an unlawful relation under a void marriage. 3. Victoria Williams Sims was his only legitimate child.

I. Louella was not an heir and therefore cannot complain of the decree. We discuss the second assignment of error first, viz., that the court erred in not finding that appellant, Louella, was one of the heirs at law of Jonas Williams. If the chancellor was correct in holding that Louella was not an heir, she has no interest in the controversy and cannot complain of any disposition made of the property. We may for the present put aside the rights of Louisa, and consider only the claims of Louella and Victoria. It is admitted that Victoria is the only legitimate child and an heir. Did Louella acquire any rights under the void marriage which enable her to divide the inheritance with Victoria?

"To be entitled under statutes conferring rights of inheritance on a widow or surviving wife, it is essential that the claimant shall have been the lawful wife of the intestate." 18 C. J., p. 844, sec. 79. "No rights of inheritance can accrue out of a void marriage, even though the parties thereto are innocent of wrong doing." 9 R. C. L. 62.

"At common law and in the absence of statutory provision having a modifying effect, a civil disability such as having a lawful living husband or wife by a former marriage, renders a subsequent marriage absolutely void *ab initio,* in consequence of which, it is good for no legal purpose, and the incidents which attend and follow on a valid marriage are not in the absence of statute acquired by the parties." 18 R. C. L. 445.

"Under ordinary circumstances the effect of a void marriage, so far as concerns the conferring of legal rights upon the parties, is as though no marriage had ever taken place. And therefore being good for no legal purpose, its invalidity can be maintained in any proceeding, in which

the fact of marriage may be material, either directly or collaterally, in any civil court, between any parties at any time, whether before or after the death of either or both the husband and wife, and upon mere proof of the facts rendering such marriage void it will be treated as non-existent by the court."

To the same effect see note to *Goset* v. *Goset,* L. R. A. 18 R. C. L., 446, 1916, at page 711, where a great number of cases are briefed, among others *Smart* v. *Shaley,* 6 Smedes & M. 308, in which case our court said: "The marriage of George Whaley to Margaret Field seems to be sufficiently established by the evidence, and also that she was living at the period when the said George married appellee in this state, in such a state of case the second marriage was null and void, and the appellee was not the lawful wife of the said George Whaley at the time of his death, and consequently was not entitled to dower in his estate."

It is certain therefore that Louella, is not an heir, and if Louisa is estopped to claim as an heir, the entire interest of Jonas Williams in the land vested in Victoria, his child. Victoria has not appealed. Can Louella complain because (if her contention is correct) the court has given something to Louisa which belongs to Victoria?

II. Louisa is not estopped from claiming as an heir of her husband, Jonas Williams. In the first place, we do not find that Louella is in a favorable position to claim estoppel. She knew that Jonas and Louisa had been married and was acquainted with their daughter, Victoria. She may have known that there had been no divorce, and certainly she could have known it if she had shown much concern in the matter. It does not appear that she would have changed her *status* if she had known.

As to Louisa, her offense is this: She left her husband for reasons which may have been fully justifiable and some years later learned that he was living with another woman. She did not file suit for divorce, nor seek to have them convicted of bigamy, nor reprove them for their sins. The

court is asked, therefore, to divest her of the title which vested in her upon her husband's death by operation of the statute. The right to take property by descent is a mere creature of the law and not a natural right. 18 C. J. 804.

"In construing statutes of descent and distribution, the general rules of statutory construction are applicable. Thus the court will endeavor to give effect to the legislative intent; and where the meaning of the language employed in the statute is explicit and unmistakable, the court will not substitute its will for that of the legislature, or give the words used any interpretation other than that which they literally import, or ingraft an exception where none exists in the language of the statute." 18 C. J. 901.

In the absence of an exception in the statutes, the heir who murders his ancestor is entitled to inherit, because the court will not engraft exceptions on the statutes of descent and distribution. See authorities reviewed in *Collins* v. *Metropolitan Life Ins. Co.,* 232 Ill. 37, Ann. Cas. 129, in which case Justice VICKER says: "When the legislature has declared by law the public policy of the state, the judicial department must remain silent, and if a modification or change in such policy is desired, the law-making department must be applied to, and not the judiciary, whose function is to declare the law, but not to make it." Our statutes involved are sections 1649 and 1651 of the Code of 1906 (sections 1381 and 1383, Hemingway's Code of 1917).

The legislature has made the right to inherit to depend solely upon the legal *status* of the parties and we are not aware of any decision of our court which makes an exception. The legislature has seen fit to make one exception, that a person may not inherit from one whose life he has taken (Code of 1906, section 1660, Hemingway's Code, section 1392). In some states, statutes declare a forfeiture of a surviving wife's rights in her husband's estate where she has left him and been living in adultery or has left him without justification (18 C. J. 857), but here, the worthiness or unworthiness of the wife is not subject to

inquiry. As was stated by the Alabama court in *Nolan* v. *Doss,* 31 So. 969: "The statute makes no exceptions on account of the wife's conduct, not even in cases of voluntary abandonment by her of her husband. The law, as it is written is plain, and it is not within the province of the courts to ingraft upon it any exceptions. As long as the marriage relation, in law, continues, just so long the rights of the wife under this statute exists . . . The evidence offered by appellants tending to show that Julia, after separation from her husband, lived and cohabited with another man, holding herself out as his wife, was properly excluded as being immaterial to the issue. The doctrine of estoppel insisted on by counsel has no application."

This case was followed in *Darrow* v. *Darrow,* 78 So. 383 (Ala.) ; *Hulett* v. *Carey,* 66 Minn. 327, 69 N. W. 31, 34 L. R. A. 384, 61 Am. St. Rep. 419 ; *Martin* v. *Martin,* 22 Ala. 86. Counsel has, in his brief, paraphrased the question asked by the court in the *Woodson case* (97 Miss. 210) ; we submit that there is a great difference between introducing proof to show that one is the person designated as beneficiary in an insurance policy and introducing proof to show that one is the person designated by statute as an heir. The legal wife has been held estopped to claim to be the beneficiary designated in the insurance policy taken out by her husband payable to his "widow or heir," when it was clear that he intended another. There was no question of heirship, guilty or innocent.

We submit that if the guilt or innocence of an heir is a subject for inquiry, our client, being the person designated by statute, is entitled to the presumption of innocence, has been found not guilty by the lower court and the chancellor was not manifestly wrong. In the *Shrader case,* 119 Miss. 526, the court made some reference to estoppel, but declined to rest its decision on that principle.

In order that the opinion might not be misleading, Justice STEVENS said: "To what extent this estoppel may be applied as against Shrader's former wife or next of kin, there may be some question;" and Justice ETHRIDGE makes

clear his stand against engrafting such an exception on our laws of descent and distribution in the following language, used in his dissenting opinion: "Inasmuch 'as there is no possessory writ by which the wife can reach out and recall to her possession the erring or straying husband; inasmuch as she can neither maintain a *habeas corpus,* writ of replevin, ejectment, or unlawful detainer to secure his possession; and inasmuch as he has the liberty of roaming wheresoer he will—I fail to see any ground for applying the doctrine of marriage by estoppel or right to a husband by adverse possession. It seems that some of the courts have fallen into this error, and held the lawful wife estopped to claim her legal rights in somewhat similar circumstances, but they surely must have been operating under a misapprehension of the law."

ANDERSON, J., delivered the opinion of the court.

This is a contest between appellants Louella Williams and her child, Willie Williams, the illegitimate wife and child of Jonas S. Williams, deceased, and appellees Louisa Williams and her child Victoria Williams, his legitimate wife and child, involving the question as to whether the former or the latter shall inherit the estate of said decedent. The chancery court rendered a decree in favor of appellees, from which appellants prosecute this appeal.

The facts are undisputed. They are: On January 13, 1901, Jonas S. Williams married appellee Louisa Williams; there was born to them one child, appellee Victoria Williams. He and his wife separated in 1905, and never lived together afterwards. On May 19, 1914, nine years after such separation, said decedent Jonas S. Williams, without being divorced from his wife Louisa, married appellant Louella Williams, with whom he lived until his death on September 10, 1921. There was born to them one child, appellant Willie Williams. Appellee Louisa Williams knew of this second pretended marriage, and knew that appellant Louella Williams and her husband

were living together as man and wife, and were generally reputed to have been legally married, and made no protest against such pretended marriage and the unlawful relation.

Appellants concede that appellee Victoria Williams, the legitimate child, has the right to inherit from her father, and that appellant Willie Williams, the illegitimate child, has not, but contend that appellant Louella Williams, the illegitimate wife, should inherit in place of the appellee Louisa Williams, the legal wife, because the latter is estopped from asserting her heirship to her husband by her conduct in not protesting against said marriage to Louella, and afterwards by failing to take the necessary legal steps to have it set aside. In other words, appellants contend that the legal wife will not now be permitted to assert that which is at variance with the condition she all along accepted, and in accordance with which she lived. To sustain their contention appellants rely on *Woodson* v. *Colored Grand Lodge of K. of H.*, 97 Miss. 210, 52 So. 457, and *Shrader* v. *Shrader*, 119 Miss. 526, 81 So. 227.

We fail to see how *Shrader* v. *Shrader, supra,* has any application whatever to the question here involved. There the question was one of resulting trust in favor of the second wife, who was the illegitimate wife. The court held that, where a man already wedded married a second wife who was ignorant of the fact that he had another wife, and thereafter he purchased land with the money of his second wife, taking the title in his own name in violation of an agreement with her to place it in her name, she was not estopped from asserting a resulting trust in such land because of the fact that she knew the deed had been taken in her husband's name and failed to bring the necessary action in court to compel a conveyance of such land from her husband to her in his lifetime. In the opinion in that case the court does say something to the effect that the first wife was estopped to claim any interest in land so acquired, but that remark was outside of the case, for the opinion rests the decision of the court squarely on the

principle of a resulting trust in the land in favor of the second wife. The court said it was her property because her money paid for it with the understanding that the title was to be taken in her name. Therefore the question of heirship was not involved.

Neither was the question involved in *Woodson* v. *Grand Lodge, supra,* one of heirship. That was a contest between the legitimate and the illegitimate wife of a deceased husband over the proceeds of his life insurance policy. The case turned upon the clause in the policy naming the beneficiary. That clause was in this language: "To the widow or heir of the said Thomas Woodson." There was no question as to who were the heirs of Thomas Woodson. The question was who was intended as beneficiary by the language "to the widow;" the contest being between two women each contending that she was the widow of the deceased. The necessary facts in order to understand the question in that case were as follows: In 1880 the deceased, Thomas Woodson, the insured, married Mary Warren Woodson, with whom he lived about three years, when they were separated, and never lived together again. Five years after such separation said Thomas Woodson married Mary Webster Woodson, with whom he lived after such marriage for nineteen years and until his death. During all this time they were reputed to be man and wife; they held themselves out as such, and there were born to them eight children. The policy of insurance involved in that case was issued in July, 1907. The insured died in November of that year. Therefore at the time said policy was taken out by the insured he had lived with his illegitimate wife about nineteen years, had eight children by her, and they had openly lived together as husband and wife, and all this occurred with the full knowledge of the first wife, who had herself remarried without being divorced from said Thomas Woodson. The court held that under all the facts and circumstances of that case the insured evidently by the language in question had reference to the last wife. In discussing the question the court was careful to say that there

was no question of heirship involved in that case; that there was no contest between different persons claiming to be heirs, and that in a case where heirship was the question "nothing but the fact of who were the legal heirs could ever settle such a controversy." Therefore the question involved in the present case was clearly excluded from consideration by the court in that case.

The case of *Darrow* v. *Darrow,* 201 Ala. 477, 78 So. 383, was a case involving among others the question here. The court said on this subject:

"We are not impressed with the suggestion that the appellee, by keeping her marriage a secret, except on certain occasions, is now estopped from claiming to be the widow of the decedent and of the right to share in his estate. Keeping the marriage a secret did not invalidate same, and was not contrary to public morals, though perhaps indiscreet and unwise, and this fact merely furnished evidence tending to show no marriage, though by no means conclusive. *Hulett* v. *Carey,* 66 Minn. 327, 69 N. W. 31, 34 L. R. A. 384, 61 Am. St. Rep. 419. Moreover, if the appellee had a valid marriage contract with the decedent, the marriage with the appellant was bigamous, on the part of the said decedent, and said second marriage was unlawful and void, and the first wife could not be deprived, under the doctrine of estoppel, of her lawful interest in her husband's estate, as the law provides the only method by which she could waive or abandon same. *Martin* v. *Martin,* 22 Ala., 86."

Chapter 35, Code of 1906 (chapter 18, Hemingway's Code), regulates the descent and distribution of property in this state. The wife is made an heir to the husband. The courts have no authority to ingraft exceptions on the statute. And, conceding that the wife by estoppel could be deprived of her right of asserting her heirship to her husband, the evidence in this case shows no element of estoppel. The nearest approach to it was mere silence on the part of the legal wife. There is nothing in the record to show she either encouraged or assented to the illegit-

imate marriage of her husband. We cannot give our assent to the proposition that mere knowledge and silence on her part estopped her from asserting her heirship.

*Affirmed.*