VAUGHAN *et al. v.* VAUGHAN.

(In Banc.   Dec. 20, 1943.)

[16 So. (2d) 23.   No. 35460.]

Henry & Barbour and Campbell & Campbell, all of Yazoo City, for appellants.

H. F. Jones, of Belzoni, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellee filed a petition in the court below, to which the administrator of the estate of General Vaughan, deceased, and Annie Claiborne Vaughan, who claims to be Vaughan's widow, were made defendants, alleging that she, and not Annie Claiborne, is Vaughan's widow, and praying for an allowance sufficient to support her for one year under sections 1664, 1667, Code of 1930, out of Vaughan's estate. The court granted the prayer of the petition, and allowed the appellee $250. The administrator and Annie Claiborne appeal and their complaints are: (1) That the evidence discloses that the

appellee is not General Vaughan's widow, but if mistaken in that: (2) that she and Vaughan separated prior to his death and he was not supporting her then; and (3) the allowance is excessive. All the parties hereto are negroes.

The evidence discloses that Vaughan married Mary Maggie Cross in May, 1902, and Agnes Green in 1908. Both of these marriages were contracted pursuant to licenses issued therefor, and the record is silent as to what became of Mary Maggie and Agnes, whether they are living or dead, and whether or not their marriages with Vaughan were dissolved by divorce. On May 5, 1917, he married the appellee pursuant to a license issued therefor, and they lived together as man and wife in Yazoo County until some time in 1938 or 1939, as to which year the evidence is not clear. They then began and continued to live apart, and Vaughan contributed nothing thereafter to the appellee's support. In 1940 Vaughan married Annie Claiborne, who is now living, and died intestate in May, 1941, leaving as his only heir either the appellee or Annie Claiborne as the evidence discloses was his lawful wife at the time of his death.

The appellee was married to Nicholson in 1893, and lived with him as his wife in Yazoo County until some time in September, 1912, when he left and never returned to her. He remained for a time in a neighboring county, but how long does not appear, and his whereabouts thereafter until some time in January, 1917, is not disclosed except that in a letter from Nicholson to the appellee in January, 1917, or to her personally thereafter Nicholson said that he had been in Arkansas. In this letter Nicholson advised the appellee that he had secured a divorce from her, and that she was at liberty to marry again. He himself had then contracted, or thereafter did contract, a second marriage.

The marriage of the appellee and Vaughan raises a presumption that the former marriages of both of them had been dissolved either by death or divorce, the burden of overcoming which rested on the appellants. There

being no evidence that Vaughan's former wives were living at the time of his marriage to the appellee, or that, if living, his marriages to them had not been dissolved by divorce, the presumption that they were dissolved by death or divorce becomes conclusive.

Nicholson was alive when the appellee married Vaughan, but the presumption arising therefrom that her marriage with Nicholson had been dissolved by divorce, which presumption "is one of the strongest known to the law," Colored Knights of Pythias v. Tucker, 92 Miss. 501, 46 So. 51, 52, will prevail unless the appellants have proven by competent evidence that her marriage with Nicholson had not been dissolved by divorce. It appears from the evidence that no divorce was granted to either the appellee or Nicholson in Mississippi, but that is not sufficient to overcome this presumption. In order for this to be done it was incumbent on the appellants to prove either that Nicholson lived continuously in Mississippi, or if he lived elsewhere for a sufficient length of time to have secured a divorce, that he did not secure one. This burden the appellant failed to meet, for it does not appear from the evidence where Nicholson lived for the greater part of the time between his separation from the appellee and her marriage to Vaughan, and for aught that here appears, he may have lived in another state or country for a sufficient length of time to have obtained a divorce there, and the presumption, in the absence of proof to the contrary, is that he did obtain such a divorce.

Although Vaughan had ceased to live with and support the appellee, the court below was warranted in believing from the evidence that this resulted from no fault of the appellee, but that the responsibility therefor was Vaughan's, and that his duty to support the appellee continued. The support fund allowed the appellee is clearly not excessive.

Affirmed.